## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| Demaree et al. ("Plaintiffs") | ) | |
| | ) | |
| | ) | |
| | ) | **C.A.: To be determined** |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| 120 Pixels SPRL; | ) | |
| Laurent Wery; | ) | |
| Charlee Jeunehomme | ) | |
| Thomas Castro; | ) | |
| Quentin Detraux; | ) | |
| Maxime Joué; | ) | |
| Arcealito Virtudazo; | ) | |
| Lindsay Rodrigues; | ) | |
| Cyril Polizzi | ) | |
| _____ | ) | |

## COMPLAINT UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("RICO")

Demaree et al. ("Plaintiffs" listed in Schedule A) hereby present this complaint under the civil Racketeer Influenced and Corrupt Organization Act ("RICO") against Defendants 120 Pixels SPRL, Laurent Wery, Charlee Jeunehomme, Thomas Castro, Quentin Detraux, Maxime Joué, Arcealito Virtudazo, Lindsay Rodrigues, and Cyril Polizzi, as part of the Enterprise known as "Slidenjoy".

## NATURE OF THIS ACTION

1.      This is a RICO act against the listed Defendants acting in their individual capacities for the Enterprise known as 'Slidenjoy' for fraudulently, through wired means,

inducing the purchase of a Product that Defendants knew or should have known it would

not be made available to purchasers, the non-delivery of the Product within the set period

for delivery, and the failure to provide refunds to purchasers of said Product upon request.

While Defendants knew that the purchasers would not receive the Product, Defendants in

their individual capacities, and through the Enterprise, continually marketed and

promoted said Product to purchasers, in a manner to induce the purchasers into believing

the Product would be forthcoming, thus inviting a purchase.  Defendants' actions have

been continuing for at least the past 5 to 7 years, and on information and belief, and

contemporary evidence, will likely continue.

2.      The Product that is the focus of this action is a device consisting of multiple

computer screens that extend from the center panel of the device, whereby the central

panel of the device is removably attached to the back of the screen of a laptop computer.

When operable, the device is able to provide different images from the CPU (central

processing unit) of the laptop, thus expanding the visual area of the laptop.  An image of

the device is shown in FIG 1.



FIG 1 ("The Product")

3.      Through this action, Plaintiffs hereby set forth the elements necessary to establish

violation of the RICO act, including setting forth the Enterprise, the Scheme, the Pattern,

more than the requisite number of acts, the damage, and the causation of the damage.

Whereas RICO requires the presence of at least two predicate acts to satisfy the *prima*

*facie* standard under the act, Plaintiffs hereby present 14 documented and

declaration-verified predicate acts, as well as further examples.  Plaintiffs further present

a list, under seal, of tens of additional acts of wire fraud.  All predicate acts follow and

adhere to Defendants scheme that led to the commission of wire fraud, a violation of the

RICO act.

4.      To the overall aspect of the Scheme, Defendants through the Enterprise marketed

and promoted the Product as though it were forthcoming, in the form of slick videos and

images posted online and on social media platforms, accepted funds from purchasers of

the Product who purchased based on the expectation of receipt of the Product, continually provided excuses for non-delivery of the Product to consumers, and regularly ignored requests for refunds or continued to provide excuses for non-delivery.  This Scheme has been operating since at least 2015.  Within the past several years, Defendants, through the Enterprise, have continually promoted the Product as though it was an item capable of being readily received by purchasers, and further that additional ancillary items may be purchased to accompany the Product.  In actuality, the Defendants, individually and collectively, were fully aware that no Product was available to be sent to purchasers, while, on information and belief, Defendants were aware their continual promotion and marketing was done to entice future purchasers of the non-existent Product.  All Defendants, on information and belief, were aware of purchaser requests for refunds as the defendants, individually and collectively, responded to requests and complaints for refunds.  These requests and complaints were waylaid with excuses delivered since the initiation of the Enterprise.  On information and belief, and due to becoming aware of this upcoming dispute, Defendants have attempted to refund payments to previous purchasers (Exhibit A).  Any refunds given in several weeks to the filing of this complaint were, on information and belief, performed in order to 'head off' this complaint.

5.      As set forth below, on information, belief, and evidence, it is the Defendants' intentions to continue with fraudulently inducing, through wired means, the purchase of non-existent Product, failing to deliver the Product, and refusing to provide refunds to Purchasers of the Product when requested.  Through Defendants own estimation, they

have collected at least US$10,000,000 as a result of their Scheme.  Defendants

individually and collectively should be held liable for the damage incurred by purchasers.

6.      It is against this backdrop that Plaintiffs collectively pursue this action.


                                    THE PARTIES

7.      The Plaintiffs to this suit are provided as Schedule A.  The Plaintiffs are

purchasers of the Product between the years 2015 to 2022 who were fraudulently induced

into purchasing the Product with the expectation that delivery would be forthcoming,

who have failed to receive the Product, and who have failed to receive a refund from the

Defendants when requested.  Rather than refund payments upon request, the Plaintiffs

continually provided excuses for the lack of delivery, for example:



and this,

**Brian Herczog** <bherczog@gmail.com>
To: "support@slidenjoy.com" <support@slidenjoy.com>

Wed, Dec 11, 2019 at 2:13 PM

Hi there-
It's been about 2 months now since my product was confirmed; just wondering what the status is on the order.

-Brian
[Quoted text hidden]

**Brian Herczog** <bherczog@gmail.com>
To: "support@slidenjoy.com" <support@slidenjoy.com>

Fri, Feb 26, 2021 at 8:13 PM

Hi there-

Been waiting on this product several years now. I have paid and not received one. Is this going to happen at all or is it some alternate form of robbery?
[Quoted text hidden]

**Slidenjoy** <support@yourslide.freshdesk.com>
Reply-To: Slidenjoy <support@yourslide.freshdesk.com>
To: bherczog@gmail.com

Mon, Mar 1, 2021 at 2:35 AM

Hi Brian,
Hope you're doing well,

We are still waiting on the test results from our production team in China, we're expecting to have them roughly next month. We will keep you updated once we have them.
Thank you for your patience.

and still this,



Jason Duncan <nz.jason.duncan@gmail.com>

**Re : WHERE IS MY ORDER???? ORDER # 146812 (ORIGINALLY SLIDE N JOY) - [QFT-DTTZZ-495]**
9 messages

**Archi - Portabl support** <support@portabl.com>
To: nz.jason.duncan@gmail.com

Sat, Jun 18, 2022 at 7:51 AM

Hi there,

Good day! Thank you for getting back. I hope you're having a great week!

We regret and apologize that the order has been delayed. I know you have heard this but, I'd like to mention that we have suffered from the shortages of aluminum and semi-components like most of the companies in the field - we are not the only ones, most firms are impacted. Production has become much more complicated to manage especially since the sector has suffered a lot from the recent events. This is mainly the reason why our April/May delivery didn't arrive on time. But fortunately, we have approached major suppliers to overcome these problems and reduce production times considerably.

With that said, I'm cordially asking for another 6 - 8 weeks of waiting. Our production team has confirmed that our new stocks will arrive in Belgium HQ within 2 months.

Could you provide us with your new address so we can update your order file?

Rest assured that your order will be ready for delivery once we receive the new stocks. If you have any questions, please feel free to get back to me.

Sincerely,

With gratitude!

Archi from Portabl
support@portabl.com



8.     Defendant 120 Pixels SPRL is a company located in Brussels, Belgium, having an address of 31 Rue de Moncheret, 6280 Acoz., Belgium (EU).  120 Pixels SPRL is a 'person' in the course of the Enterprise for the marketing, promotion, selling, and (non-existent) manufacture of the Product.

9.     Defendant Laurent Wery, is CEO of Defendant 120 Pixels SPRL, with an address of 31 Rue de Moncheret, 6280 Acoz. Belgium, who is responsible for directing the efforts of 120 Pixels, as well as other defendants in the manner of promotion, marketing, and selling of the Product.  Defendant Wery has been a founder and manager of 120 Pixels SPRL since 2015.

10.    Defendant Charlee Jeunehomme is a founder and marketer, having an address of "Defendant Jeunehomme, in care of 120 Pixels SPRL, 31 Rue de Moncheret, 6280 Acoz., Belgium". As a founder, Defendant Jeunehomme is responsible for co-leading the effort in promotion, marketing, and selling of the Product.  Defendant Jeunehomme regularly participates in marketing events in the United States.

11.    Defendant Thomas Castro is a founder and marketer, having an address of "Defendant Castro, in care of 120 Pixels SPRL, 31 Rue de Moncheret, 6280 Acoz., Belgium".  As a founder, Defendant Castro is and has been responsible, since 2015, in leading the effort in promotion, marketing, and selling of the Product.

12.    Defendant Quentin Detraux is a customer service agent, having an address of "Defendant Detraux in care of 120 Pixels SPRL, 31 Rue de Moncheret, 6280 Azoz., Belgium", and is responsible for waylaying concerns and requests for refunds from customers of the Product.  Defendant Detraux, through his communications with

customers, knew or should have known that Product was not being delivered to customers per the terms of their purchase.  Defendant Detraux regularly provided fraudulent information to customers concerning the pendency of their Product order, thus fraudulently inducing them to avoid requesting a refund in anticipation of the delivery of the Product (Exhibit B1). Notably, Defendant Quentin Detraux worked for the Enterprise at least since 2021, but he changed his Linkedin profile, indicating the starting time of his work was June 2022 (Exhibit B1 and Exhibit B2). On information and belief, Defendants Maxime Joué, Lindsay Rodrigues, and Cyril Polizzi also worked for the Enterprise before June 2022, but they all changed the timeline to June 2022 on their Linkedin profiles. This is a clear indication of Defendants' purposefully erasing evidence of their participation in the Enterprise.

13.     Defendant Maxime Joué is a customer service agent,  having an address of "Defendant Joué in care of 120 Pixels SPRL, 31 Rue de Moncheret, 6280 Azoz., Belgium", and is responsible for waylaying concerns and requests for refunds from customers of the Product.  Defendant Joué, through his communications with customers, knew that the Product was not being delivered to customers per the terms of their purchase.  Defendant Joué regularly provided fraudulent information to customers concerning the pendency of their Product order, thus fraudulently inducing them to avoid requesting a refund in anticipation of the delivery of the Product (Exhibit C).

14.     Defendant Arcealito Virtudazo is a customer service support manager, having an address of "Defendant Virtudazo in care of 120 Pixels SPRL, 31 Rue de Moncheret, 6280 Azoz., Belgium", and is responsible for creating the system of communication and

organization between customers and customer service agents.  Defendant Virtudazo, in an effort to avoid customers having one point of contact (i.e., customer service agent) when inquiring about Product delivery and refunds, devised a system of 'round robin', whereby customers were routinely routed to new agents.  This method ensured customers were 'starting anew' whenever they made requests about Product delivery and refunds (Exhibit D).

15.     Defendant Lindsay Rodrigues, as a community manager, having an address of "Defendant Rodrigues in care of 120 Pixels SPRL, 31 Rue de Moncheret, 6280 Azoz., Belgium", regularly promoted and posted, via social media, aspects of the Product and the 120 Pixels SPRL company.  Her efforts fraudulent encouraged Plaintiffs, as future customers, into believing delivery of the Product would be accomplished upon purchase (Exhibit E).

16.     Defendant Cyril Polizzi is a marketing supervisor, having an address of "Defendant Cyril Polizzi in care of 120 Pixels SPRL, 31 Rue de Moncheret, 6280 Azoz., Belgium", and is responsible for creating video presentations and image stills of the Product.  Through Defendant Cyril's efforts, the Enterprise Slidenjoy was able to fraudulently induce purchasers to buy the Product based on the belief that the Product was ready for shipping or was imminently ready for shipping.  Cyril was also responsible for communicating with purchasers to waylay their concerns when they continually requested status updates or refunds (Exhibit F).

**JURISDICTION AND VENUE**

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 based on Plaintiff's claims for violations of the Racketeer Influenced and Corruption Organizations Act ("RICO"), 18 U.S.C. §1961-68.

18.     Venue is proper in this District pursuant to 18 U.S.C. §1965 (a) and (b) as, on evidence, Defendants have marketed and made sales within this District.  Further, Defendant 120 Pixels SPRL has engaged in business agreements with entities within this jurisdiction, including the Kickstarter crowdsourcing platform for the promotion and marketing of the Product.

19.     Each Defendant is subject to the personal jurisdiction of this Court because each Defendant has voluntarily subjected himself to the jurisdiction of this Court, and/or has purposefully availed himself, herself, or itself of the jurisdiction of this Court for the specific transactions at issue.  Further, minimum contact is established for all Defendants under 18 U.S.C. § 1965 as personal jurisdiction is established for Defendant 120 Pixels SPRL based upon its contact with the State of New York.

20.     Statute of Limitations has not been breached in this case as Defendants continually assured Plaintiffs the Product was to be delivered forthwith, and Defendants requested additional time.  As Plaintiffs continually relied upon Defendants statements of future delivery, the statute of limitations has not tolled as Plaintiffs reasonably were not aware of the fraud.

**BACKGROUND**

21.     The Rise of Internet Fraud.  As the Internet and technological advances continue to reshape how people live and do business, fraud and scams are generated and evolving

along with these progressions.  Nowadays, internet fraud is the biggest threat facing the public and most businesses.  According to the Federal Bureau of Investigation (FBI), Internet fraud activities have compromised businesses in many sectors, as well as the American public.[1]   In 2022, Federal Trade Commission data released a report showing that consumers reported losing more than $5.8 billion to fraud in 2021, an increase of more than 70 percent over the previous year.[2]   The FTC received fraud reports from more than 2.8 million consumers last year, with one of the most commonly reported categories being imposter scams and online shopping scams.

22.     Internet Fraud as a Subset of Wire Fraud.  Transactions over the Internet usually involve interstate communications by wire. 18 U.S.C. § 1343 sets forth that wire fraud is any act of defrauding through electronic communication, including the Internet and wire transfers, which governs any writing, sign, signal, picture, or sound.  The elements of wire fraud include intentional participation in a scheme to defraud and the use of interstate or foreign commerce wires in furtherance of that scheme.  Wire fraud statutes serve to punish the scheme, not its success.[3]

23.     Internet fraud in New York State.  Over the last five years, the IC3 has received an average of 552,000 complaints per year.[4]   These complaints address a wide array of Internet scams affecting victims across the globe. As one of the top five states based on

---

[1] See *Federal Bureau of Investigation Internet Crime Report, 2021,* https://www.ic3.gov/Media/PDF/AnnualReport/2021_IC3Report.pdf.
[2] See *New Data Shows FTC Received 2.8 Million Fraud Reports from Consumers in 2021,* https://www.ftc.gov/news-events/news/press-releases/2022/02/new-data-shows-ftc-received-28-million-fraud-reports-consumers-2021-0 (Accessed: October 10, 2022).
[3] See *United States v. Trapilo,* 130 F.3d 552 (2d Cir.1997).
[4] See IC3 Report, at pp. 7.

the number of reporting victims labeled from internet fraud, New York reported 29,065

victims defrauded by Internet fraud.[5]  Scammers used Internet fraud to swindle New York

State out of 50% more money in 2021, to a total of $ $559,965,598.  It put the state

second in the United States for most money lost from fraud in 2020, with $ 415,812,917.

in reported losses, according to the FBI.  However, these numbers are the tip of the

iceberg.  Scammers thrive because they know consumers are hesitant to report that

they've been victims, said John Breyault, Vice President of Public Policy,

Telecommunications, and Fraud with the National Consumers League.[6]  FBI suggests that

many other instances of actual or suspected online frauds are not being reported, perhaps

because victims didn't know about the IC3, were embarrassed that they fell victim to a

scammer, or thought filing a complaint wouldn't make a difference.

24.     Nondelivery Fraud.  According to the FBI, one of the most widespread examples

of wire fraud is non-delivery fraud.  According to the 2021 Internet Crime Report,

non-payment or non-delivery scams cost the public more than US$337 million.[7]

25.     In a non-delivery internet scam, a consumer is fraudulently induced to pay for

goods or services they locate online, but they never receive the promised items or

services, or what is delivered is of lesser quality.   Non-delivery fraud encompasses false

promises of future actions.  This type of fraud frequently connects with other offenses,

---

[5] *Id.* at pp. 21.
[6] See *Victim blaming prevents consumers from coming forward and reporting fraud*,
https://www.tmj4.com/news/i-team/victim-blaming-prevents-consumers-from-coming-for
ward-and-reporting-fraud (last visited August 31, 2022).
[7] FBI 2021 Internet Crime Report Report. at pp. 31.

such as credit card fraud, identity theft, securities fraud, false representation scams, and making false statements to federal agents or other representatives of the government.

26.     The COVID-19 pandemic created another advantage for non-delivery fraud scams to soar since 2020.  As of mid-June of 2022, the Federal Trade Commission (FTC) logged nearly 754,000 consumer complaints related to COVID-19 and stimulus payments since the pandemic's start, costing consumers $827.6 million, with a median loss of $426.[8]  Specifically, the number of non-delivery or non-payment fraud, as one of the top five Internet crimes, grew 76% from 2020 to 2021.

27.     The Aftermath of Internet Fraud Stays for a Long Time.  The rise of digital platforms and e-commerce opens the door to myriad fraud and other economic crime risks that the public is just beginning to appreciate.[9]  These vast arrays of Internet frauds have cut across all industries, affecting victims across the United States and threatening to destroy the social, political, economic, and moral heart of this Nation.[10]  Internet fraud has a devastating and compounding effect on victims, amplifying the vulnerability and inequality they suffer. Fraud causes lasting mental and physical trauma for victims and sometimes takes people's lives.

28.     Serious internet fraud and victimization of the public grow privacy concerns and demands. Internet fraud can result in distorted markets where fraudsters obtain a

---

[8] *Beware of Robocalls, Texts, and Emails Promising COVID-19 Cures or Stimulus Payments,* https://www.aarp.org/money/scams-fraud/info-2020/coronavirus.html (last visited August 29, 2022).
[9] Id.
[10] See *Organized Crime Control: Hearings on S. 30 and Related Proposals Relati Control of Organized Crime in the U.S.* Subcomm. No. 5 of the H. Comm. on the Judiciary, 91st Cong 86 (1970) (statement of Sen. John L. McClellan).

competitive advantage and drive legitimate businesses out. It can affect services delivered by businesses and expose other sectors to further instances of fraud. The public will be reluctant to embrace e-Commerce fully, preventing a new form of business from being created. More importantly, these issues are eroding people's trust in the society that has been built up over the centuries.

### THE UNDERLYING FACTS OF THE PRODUCT ('SLIDENJOY')

29.     The History of the Slidenjoy Product.  Starting in July 2015 and continuing into August 2015, the Defendant 120 Pixels SPRL began a campaign on the New York-based crowdfunding platform Kickstarter.com.[11]  Giving the story of the founders Defendant Thomas Castro, Defendant Charlee Jeunehomme, and Defendant Laurent Wery, Defendant 120 Pixels SPRL offered a Product, also known as 'Slidenjoy,' to purchasers through the Kickstarter campaign.  The campaign offered a number of different versions of the Product, and the amount paid by the campaign supporters was explicitly based on the desired features in their version of the Product (Exhibit G).  On information and belief, the Kickstarter campaign generated over US$10,000,000 for Defendant 120 Pixels SPRL.

30.     Following the Kickstarter campaign, the Defendants Castro, Jeunehomme, and Wery continued their promotion and marketing effort of the Product on the website 'yourslide.com' stored on the servers owned by OVHCloud.[12]  Defendant continued to

---

[11] Kickstarter.com, on information and belief, is owned by Kickstarter, PBC is a foreign business corporation registered under New York law.
[12] OVHCloud is owned by HEBERGEMENT OVH INC , incorporated under the laws of Quebec.

advertise the Product as though in-manufacture was occurring and delivery for purchasers was imminent (Exhibit H).  Defendant further began creating videos to promote the Product on social media sites and on the website itself.  In promoting the Product, purchasers were offered a number of features they could select from, including color, size, and material (Exhibit I).

31.     Defendants Castro, Jeunehomme, and Wery continued their promotion and marketing efforts, as well as sales, of the Product through 2022, using yourslide.com as their selling platform.  Examples of videos produced during that period that promoted the Product can be seen at these URL links:

https://app.box.com/s/rtjkr3brkk5jqka4sapu3mj8d3wzfeit,

https://app.box.com/s/uswf2vauyptn9cxfbk1l5rpq6sokpplb, and

https://app.box.com/s/rnp5pisxq7pc4u4bq7h94gfd5kb8fyld.  On information and belief, Defendants Castro, Jeunehomme, and Wery paid third parties to review the Product and publish the review, further providing the impression that the Product was "in-manufacture" or ready for delivery.  The videos show the Product to be at the stage of completion, or at least "in-manufacture." In reality, and on information and belief, Defendants only manufactured a handful of the Product necessary to produce videos, create still images, and allow reviews, all to further the impression that the product was "in-manufacture" or ready to deliver.

32.     In 2022, Defendants ended the promotion, marketing, and sales of the Product at the site yourslide.com and relocated their operations to the site 'portabl.com' also on the server platform OVHCloud.  The Product was continually offered with variations, videos

were presented on the portabl.com site, all in an effort to continue the impression that the product was "in-manufacture" or delivery was imminent.

33.   At the time of this action, all Defendants in this action are continuing to offer the Product on the portabl.com site.  There has been no widespread manufacture or delivery of the Product to any previous or current purchasers of the Product.  Defendants, knowingly through their employees, continue to receive requests for refunds but regularly make excuses as to why delivery has not occurred.  Defendants have further offered ancillary products, such as bags for the Product, all in an effort to give the impression that the Product is "in-manufacture" or is ready for delivery.

34.   THE SCHEME.  Defendants' scheme is easy to understand and straightforward.  It relies on giving the impression to future purchasers that the Product is "in-manufacture" and that delivery will occur rapidly.  Defendants' scheme involves the regular promotion and marketing of the Product, on its website (portabl.com, previously yourslide.com) and on social media sites such as Instagram, using slickly produced videos and still shots of users engaging with the Product (Exhibit J)  Upon purchasing the Product, purchasers are given a bogus period for delivery.  After the period for delivery has passed, if purchasers inquire as to the reason why their product has not been delivered, Defendants give regular, canned responses, such as factory problems in China, Covid-19, production testing, etc (Exhibit K1 and K2)  Multiple inquiries by purchasers result in responses from different persons of Defendant 120 Pixels SPRL, thus requiring purchasers to feel as though they are inquiring 'for the first time.'  Requests for refunds have been regularly rebuffed or even ignored by Defendants (Exhibit L).

35. **THE ENTERPRISE.** The Enterprise is consisted of non-parties Kickstarter.com (Kickstarter, PBC) and OVHCloud (HEBERGEMENT OVH INC), Defendants entity 120 Pixels SPRL, and Defendants individuals Laurent Wery, Charlee Jeunehomme, Thomas Castro, Quentin Detraux, Maxime Joué, Arcealito Virtudazo, Lindsay Rodrigues, and Cyril Polizzi.

36.     THE PREDICATE ACTS.  Plaintiffs hereby present multiple predicate acts that exhibit the Enterprise's scheme.  The Defendants, under the guise of employment of the Defendant 120 Pixels SPRL, worked with common purpose with the entities Kickstarter.com (Kickstarter, PBC) and OVHCloud (HEBERGEMENT OVH INC) because their behavior and lack of action was the fraudulent inducement, underwired means, of purchasers of the Product, and such wire fraud is impermissible under the RICO act.  Kickstarter.com (Kickstarter, PBC) and OVHCloud (HEBERGEMENT OVH INC) constituted part of the Enterprise as, even though the entities were informed of the fraudulent activities of the Defendants, they failed to act even after being informed of the fraudulent behavior by Defendants, thereby allowing the fraudulent activity to continue on their platforms.  Exhibits are provided herewith establishing communication was sent from Plaintiffs to the Kickstarter.com (Exhibit M) and OVHCloud platforms (Exhibit N1-N3).  Plaintiffs are aware that only two predicate acts are necessary for the *prima facie* standard under RICO, however, they provide a significant number due to the egregious nature of Defendants behavior.

37.     **Predicate Act No. 1**:  Berenger Lieber. Client Berenger Lieber is a resident of France. All communications between him and the Defendants occurred while the client

was in France over the internet (Declaration of Berenger Lieber).  Client Berenger Lieber

saw Defendants' screen product "Le Slide" on a website called Kickstarter.com, where

Defendants indicated to produce and deliver a computer screen product soon (*Id.*; Exhibit

PA01: Slidenjoy project on Kickstarter.com).  Defendants stated on Kickstarter.com that

the product was ready to be produced and would be shipped at the end of 2015 (*Id.*;

Exhibit PA02: Timeline on Kickstarter.com).  On or about July 7, 2015, client Berenger

Lieber pre-ordered/funded Defendants' product through Kickstarter.com (Exhibit PA03:

receipt from Kickstarter, dated July 7, 2015; Declaration of Berenger Lieber). The receipt

shows the estimated delivery date was December 2015. *Id.*   Client Berenger Lieber

totally paid 338 Euros to purchase the product (Exhibit PA03: receipt from Defendants,

dated October 6, 2019).   However, Defendants changed the delivery deadlines

(Declaration of Berenger Lieber).  On or about May 30, 2016, client Berenger Lieber

tried to ask for a refund (Exhibit PA04: emails from Berenger Lieber, dated May 30,

2016). However, Defendants stated that the money could not be refunded. (Exhibit PA05:

emails from Defendants, dated May 30, 2016).  To date, client Berenger Lieber has not

received the product Defendants promised to deliver (Declaration of Berenger Lieber).

Also, client Berenger Lieber has never received a full refund of the amounts paid based

on the agreement. *Id.*   Due to Defendants' failure to deliver the product, the client has

suffered injuries, including financial injuries, by being required to hire U.S. attorneys to

attempt to collect the amounts paid and to expose and prosecute Defendants' criminal

activities. *Id.*

39.   **Act No. 2**:  Brian Herczog. Client Brian Herczog is a resident of the United States.

All communications between him and the Defendants occurred while the client was in the

United States over the internet (Declaration of Brian Herczog).  Client Brian Herczog

saw Defendants' screen product "Le Slide" on a website called Kickstarter.com, where

Defendants promised to produce and deliver a computer screen product soon (*Id.*; Exhibit

PA01: Slidenjoy project on Kickstarter.com).  Defendants stated on Kickstarter.com that

the product was ready to be produced and would be shipped at the end of 2015 (*Id.*;

Exhibit PA02: Timeline on Kickstarter.com).  On or about July 8, 2015, client Brian

Herczog funded and pre-ordered the product through Kickstarter.com (Exhibit PA06:

receipt from Kickstarter, dated July 8, 2015; Declaration of Brian Herczog). The client

received a receipt from Kickstarter.com stating they received the order. *Id.*  The receipt

shows the estimated delivery date was December 2015. Id. Client Brian Herczog totally

paid $ 452.22 to purchase the product (Declaration of Brian Herczog).   Later, Defendants

changed the delivery deadlines multiple times. *Id.*  In addition, Defendants reassured

client Brian Herczog that they would deliver a product. *Id.*  On or about October 15,

2019, client Brian Herczog found that he was required to set up his account, and he tried

to check the status of the delivery (Exhibit PA07: email between Brian Herczog and

Defendants, dated October 15, 2019). Defendants did not answer the question about the

steps of the delivery. *Id.*  To date, client Brian Herczog has not received the product

Defendants promised to deliver (Declaration of Brian Herczog).  Also, client Brian

Herczog has never received a full refund of the amounts paid based on the agreement. *Id.*

Due to Defendants' failure to deliver the product, client Brian Herczog has suffered

injuries, including financial injury of payment, and by being required to hire U.S.

attorneys to attempt to collect the amounts paid and to expose and prosecute Defendants'

criminal activities. *Id.*

40.     **Act No. 3**:  Christopher Rines. Client Christopher Rines is a resident of

Burlington. All communications between him and the Defendants occurred while the

client was in Burlington over the internet (Declaration of Christopher Rines).  Client

Christopher Rines saw Defendants' screen product "Le Slide" on a website called

Kickstarter.com, where Defendants promised to produce and deliver a computer screen

product soon (*Id.*; Exhibit PA01: Slidenjoy project on Kickstarter.com).  Defendants

stated on Kickstarter.com that the product was ready to be produced and would be

shipped at the end of 2015 (*Id.*; Exhibit PA02: Timeline on Kickstarter.com).  On or about

July 17, 2015, client Christopher Rines funded and pre-ordered the product through

Kickstarter.com (Exhibit PA08: receipt from Kickstarter, dated July 17, 2015; Declaration

of Christopher Rines). The client received a receipt from Kickstarter.com stating they

received the order. *Id.* The receipt shows the estimated delivery date was December 2015.

*Id.* Client Christopher Rine paid 373 Euros to purchase the product and 74 Euros for the

shipping fee. *Id.*  However, since 2015, Defendants changed the delivery deadlines

multiple times (Declaration of Christopher Rines).  Client Christopher Rines tried to

check the status of the delivery and ask for a refund (Exhibit PA09: email from

Christopher Rines, dated May 18, 2022). Defendants told the client new stocks would

arrive in Belgium within two months. (Exhibit PA09: email from Defendants, dated May

18, 2022).  However, Defendants later changed the delivery time again and did not give a

concrete timeline (Exhibit PA10: email from Defendants, dated September 23, 2022).

However, Defendants later ignored the client's request for a refund by stating that the

problem had been solved (Exhibit PA11: email from Defendants, dated September 23,

2022). To date, client Christopher Rines has not received the product Defendants

promised to deliver (Declaration of Christopher Rines). Also, client Christopher Rines

has never received a full refund of the amounts paid based on the agreement. *Id.*  Due to

Defendants' failure to deliver the product, client Christopher Rines has suffered injuries,

including financial injury of payment, and by being required to hire U.S. attorneys to

attempt to collect the amounts paid and to expose and prosecute Defendants' criminal

activities. *Id.*


40.   **Act No. 4**:  Timothy Leung. Client Timothy Leung is a resident of the United

States. All communications between him and the Defendants occurred while the client

was in the United States over the internet (Declaration of Timothy Leung).  Client

Timothy Leung saw Defendants' advertisements about the screen product "Le Slide" on a

website called Kickstarter.com, where Defendants promised to produce and deliver a

computer screen product (*Id.*; Exhibit PA01: Slidenjoy project on Kickstarter.com).

Defendants stated on Kickstarter.com that the product was ready to be produced and

would be shipped at the end of 2015 (*Id.*; Exhibit PA02: Timeline on Kickstarter.com).

On or about August 9, 2015, client Timothy Leung ordered the product from

Kickstarter.com (Declaration of Timothy Leung). On Kickstarter.com, Defendants

required client Timothy Leung to make a payment for Defendants' product.  *Id.* Client

Timothy Leung totally paid $ 375.40 to purchase the product (Exhibit PA12: receipt from Defendant, dated October 6, 2019).  However, since August 9, 2015, Defendants changed the delivery deadlines (Declaration of Timothy Leung). Starting from February 2, 2018, client Timothy Leung tried to check the status of the delivery (Exhibit PA13: messages from Timothy Leung to Defendants, dated February 2, 2018). Defendants promised that the product would be shipped before early May 2018. Id.  On June 8, 2021, after yet another missed deadline by Defendants, client Timothy Leung asked for a refund of payment from Defendants (Exhibit PA14: email from Timothy Leung, dated June 8, 2021; Declaration of Timothy Leung). However, Defendants did not give a concrete timeline but told the client to be patient. (Exhibit PA14: email from Defendants, dated June 14, 2021).  To date, client Timothy Leung has not received the product Defendants promised to deliver (Declaration of Timothy Leung). Also, client Timothy Leung has never received a full refund of the amounts paid based on the agreement. *Id.*  Due to Defendants' failure to deliver the product, client Timothy Leung has suffered injuries, including financial injuries, by being required to hire U.S. attorneys to attempt to collect the amounts paid and to expose and prosecute Defendants' criminal activities. *Id.*

41.    **Act No. 5**:  Kenny Ling. Client Kenny Ling is a resident of the United States. All communications between him and the Defendants occurred while the client was in the United States over the internet (Declaration of Kenny Ling).  Client Kenny Ling saw Defendants' advertisements about the Slidenjoy/Portabl's screen product "Le Slide" on a website called Kickstarter.com, where Defendants promised to produce and deliver a

computer screen product soon (*Id.*; Exhibit PA01: Slidenjoy project on Kickstarter.com).

Defendants stated on Kickstarter.com that the product was ready to be produced and

would be shipped at the end of 2015 (*Id.*; Exhibit PA02: Timeline on Kickstarter.com).

On or about August 10, 2015, client Kenny Ling funded and pre-ordered the product

through Kickstarter.com (Exhibit PA 15: receipt from Kickstarter, dated August 10, 2015;

Declaration of Kenny Ling). The client received a receipt from Kickstarter.com stating

they received the order. *Id.* The receipt shows the estimated delivery date was December

2015. *Id.* Client Kenny Ling totally paid $ 338 to purchase the product. *Id.*  However,

since 2015, Defendants changed the delivery deadlines multiple times (Exhibit PA16:

email from Defendants; Declaration of Kenny Ling).  Client Kenny Ling tried to check

the status of the delivery and asked for a refund (Exhibit PA17: email from Kenny Ling,

dated May 27). However, Defendants told the client to keep waiting (Exhibit PA18: email

from Defendants).  To date, client Kenny Ling has not received the product Defendants

promised to deliver (Declaration of Kenny Ling). Also, client Kenny Ling has never

received a full refund of the amounts paid based on the agreement. *Id.*  Due to

Defendants' failure to deliver the product, the client has suffered injuries, including

financial injuries, by being required to hire U.S. attorneys to attempt to collect the

amounts paid and to expose and prosecute Defendants' criminal activities. *Id.*


42.     **Act No. 6**:  Gary Edmond. Client Gary Edmond is a resident of the United

Kingdom. All communications between him and the Defendants occurred while the client

was in the United Kingdom over the internet (Declaration of Gary Edmond).  Client Gary

Edmond saw Defendants' advertisements about the Slidenjoy/Portabl's screen product

"Le Slide" on a website, Kickstarter.com, where Defendants promised to produce and

deliver a computer screen product (*Id.*; Exhibit PA01: Slidenjoy project on

Kickstarter.com).  Defendants stated on Kickstarter.com that the product was ready to be

produced and would be shipped at the end of 2015 (*Id.*; Exhibit PA02: Timeline on

Kickstarter.com).  On or about September 1, 2015, client Gary Edmond pre-ordered the

product through Kickstarter.com (Exhibit PA19: receipt from Kickstarter, dated

September 1, 2015; Declaration of Gary Edmond). The receipt shows the estimated

delivery date was December 2015. *Id.*  The client received a receipt from Kickstarter.com

stating they received the order (Exhibit PA20: receipt from Kickstarter, dated September

1, 2015; Declaration of Gary Edmond). Client Gary Edmond totally paid 488 Euros to

purchase the product (Declaration of Gary Edmond).  However, since 2015, Defendants

changed the delivery deadlines multiple times. *Id.* In addition, Defendants reassured

client Brian Herczog that they would deliver a product. *Id.* On or about December 30,

2019, client Gary Edmond asked for a refund from Defendants (Exhibit PA21: email from

Gary Edmond, dated December 30, 2019). However, Defendants did not give an answer

to the client's questions (Exhibit PA22: email from Defendants, dated November 5,

2021).  To date, client Gary Edmond has not received the product Defendants promised to

deliver (Declaration of Gary Edmond). Also, client Gary Edmond has never received a

full refund of the amounts paid based on the agreement. *Id.*  Due to Defendants' failure to

deliver the product, the client has suffered injuries, including financial injuries, by being

required to hire U.S. attorneys to attempt to collect the amounts paid and to expose and prosecute Defendants' criminal activities. *Id.*

43.    **Act No. 7**:  Daniel MacDonald. Client Daniel MacDonald is a resident of the United States. All communications between him and the Defendants occurred while the client was in the United States over the internet (Declaration of Daniel MacDonald).  On or about March 24, 2016, client Daniel MacDonald ordered the "Le Slide" product on Slidenjoy/Portabl's website on the OVHCloud platform ("Slidenjoy/Portabl's website"), where Defendants promised to deliver a computer screen product (Exhibit C and D; Exhibit PA23: payment from the client, dated March 24, 2016; Declaration of Daniel MacDonald).  On Slidenjoy/Portabl's website, Defendants required client Daniel MacDonald to make a payment for Defendants' product, for which client Daniel MacDonald totally paid 60 Euros through Paypal. *Id.* Defendants then sent a receipt to confirm the order (Exhibit PA24: receipt from Defendants, dated March 24, 2016). However, between March 24, 2016, and the present, Defendants changed the delivery deadlines multiple times (Declaration of Daniel MacDonald).  On February 6, 2018, client Daniel MacDonald tried to check the delivery status (Exhibit PA25: email from Daniel MacDonald, dated August February 6, 2018).  On June 26, 2019, after yet another missed deadline by Defendants, client Daniel MacDonald requested again for a refund of payment from Defendants, who again dodged the question and did not give an answer (Exhibit PA26: emails between Daniel MacDonald and Defendants, dated June 27, 2019; Declaration of Daniel MacDonald).  To date, client Daniel MacDonald has not received

the product that Defendants promised to deliver (Declaration of Daniel MacDonald).

Also, client Daniel MacDonald has never received a full refund of the amounts paid

based on the agreement. *Id.*  Due to Defendants' failure to deliver the product, client

Daniel MacDonald has suffered injuries, including financial injury, by being required to

submit payment through Defendants' payment system and by being required to hire U.S.

attorneys to attempt to collect the amounts paid and to expose. *Id.*

44.    **Act No. 8**:  Denise Yelvington. Client Denise Yelvington is a resident of the

United States. All communications between him and Defendants occurred while the

client was in the United States over the internet (Declaration of Denise Yelvington).  On

or about March 3, 2017, client Denise Yelvington ordered the product "Slide" on

Slidenjoy/Portabl's website, where Defendants presented and agreed to deliver their

completed computer screen product (Exhibit C and D; Exhibit PA27: receipt, dated

March 3, 2017; Declaration of Denise Yelvington).  On Slidenjoy/Portabl's website,

Defendants required client Denise Yelvington to make a payment for Defendants'

product, for which client Denise Yelvington totally paid $ 318.08. *Id.*  However, between

March 3, 2017, and the present, Defendants changed the delivery deadlines multiple

times (Exhibit PA28: email from Defendants, dated January 24, 2020; Exhibit PA29:

email from Defendants, March 10, 2020; Declaration of Denise Yelvington). Specifically,

Defendants reassured client Denise Yelvington that they would deliver a product by the

end of February 2020. *Id.*  Client Denise Yelvington attempted to engage with Defendants

multiple times to check the delivery status and request a refund of paid funds totaling

(Exhibit PA30-PA37: emails between Denise Yelvington and Defendants, dated

September 14, 2017, to January 20, 2020; Declaration of Denise Yelvington). However,

to date, client Denise Yelvington has not received the product that Defendants promised

to deliver (Declaration of Denise Yelvington). Also, client Denise Yelvington has never

received a full refund of the amounts paid based on the agreement. *Id.*  Due to

Defendants' failure to deliver the product, client Denise Yelvington has suffered injuries,

including financial injury, by being required to submit payment through Defendants'

payment system and by being required to hire U.S. attorneys to attempt to collect the

amounts paid and to expose. *Id.*

45.    **Act No. 9:**  George Taylor. Client George Taylor is a resident of the United States.

All communications between him and the Defendants occurred while the client was in the

United States over the internet (Declaration of George Taylor).  On or about April 6,

2017, client George Taylor ordered the product "Slide" on Slidenjoy/Portabl's website,

where Defendants presented and agreed to deliver their completed computer screen

product (Exhibit C and D; Exhibit PA38: receipt, dated April 6, 2017; Declaration of

George Taylor).  On Slidenjoy/Portabl's website, Defendants required client George

Taylor to make a payment for the product, which client George Taylor paid 349 Euros on

April 6, 2017. *Id.*  However, between April 6, 2017, and the present, Defendants changed

the delivery deadlines (Declaration of George Taylor). On or about June 10, 2021, after

yet another missed deadline by Defendants, client George Taylor asked for a refund of

payment from Defendants (Exhibit PA39: email from George Taylor, dated June 10,

2021; Declaration of George Taylor). However, Defendants did not give a concrete

timeline but kept telling the client to be patient. (Exhibit PA39: email from Defendants, dated June 10, 2021). To date, client George Taylor has not received the product Defendants promised to deliver (Declaration of George Taylor). Also, client George Taylor has never received a full refund of the amounts paid based on the agreement. *Id.* Due to Defendants' failure to deliver the product, client George Taylor has suffered injuries, including financial injury, by being required to submit payment through Defendants' payment system and by being required to hire U.S. attorneys to attempt to collect the amounts paid and to expose. *Id.*

46.    **Act No. 10**: Matthew Mickle. Client Matthew Mickle is a resident of the United States. All communications between him and the Defendants occurred while the client was in the United States over the internet (Declaration of Matthew Mickle ).  On or about August 22, 2018, client Matthew Mickle ordered the product "Slide" on Slidenjoy/Portabl's website, where Defendants presented and agreed to deliver their completed computer screen product. (Exhibit C and D; Declaration of Matthew Mickle). Client Matthew Mickle made two payments to Defendants, including $ 92.34 (Exhibit PA40: receipt 1) and $424.76 (Exhibit PA41: receipt 2).  Between August 22, 2018, and the present, Defendants changed the delivery deadlines multiple times (Declaration of Matthew Mickle). The client continually attempted to engage with Defendants multiple times to check the delivery status and request a refund of paid funds totaling (Exhibit PA42: emails between Matthew Mickle and Defendants, dated January 15, 2019; Declaration of Matthew Mickle). Defendants assured that they would start to deliver the

products in May 2019. *Id.*   To date, client Matthew Mickle has not received the product that Defendants promised to deliver (Declaration of Matthew Mickle). Also, client Matthew Mickle has never received a full refund of the amounts paid based on the agreement. *Id.* Due to Defendants' failure to deliver the product, client Matthew Mickle has suffered injuries, including financial injury, by being required to submit payment through Defendants' payment system and by being required to hire U.S. attorneys to attempt to collect the amounts paid and to expose. *Id.*

47.   **Act No. 11**:  Alex Yohn. Client Alex Yohn is a  resident of the United States. All communications between him and the Defendants occurred while the client was in the United States over the internet (Declaration of Alex Yohn).  Client Alex Yohn saw Slidenjoy/Portabl's advertisement about Slidenjoy/Portabl's screen product "Le Slide" (Exhibit: Slidenjoy's website). On or about May 24, 2019, client Alex Yohn ordered the "Le Slide" product on Slidenjoy/Portabl's website, where Defendants advertised and promised to deliver a computer screen product (Exhibit C and D; Exhibit PA43: receipt from Defendant, dated May 24, 2019; Declaration of Alex Yohn).  On Slidenjoy/Portabl's website, Defendants required client Alex Yohn to make a payment for Defendants' product, for which client Alex Yohn totally paid $ 359.10. *Id.* Defendants then sent a receipt to confirm the order (Id; Declaration of Alex Yohn ).  However, between May 24, 2019, and the present, Defendants changed the delivery deadlines multiple times (Declaration of Alex Yohn).   Later, after yet another missed deadline by Defendants, client Alex Yohn tried to check the status of the delivery and asked for a refund of

payment from Defendants (Exhibit PA44: email from Alex Yohn, dated June 3, 2021;

Declaration of Alex Yohn). However, Defendants did not give a concrete timeline but

kept telling the client to be patient. (Exhibit PA45: email from Defendants, dated June 7,

2021; Declaration of Alex Yohn).  To date, client Alex Yohn has not received the product

that Defendants promised to deliver (Declaration of Alex Yohn). Also, client Alex Yohn

has never received a full refund of the amounts paid based on the agreement. *Id.*  Due to

Defendants' failure to deliver the product, client Alex Yohn has suffered injuries,

including financial injury, by being required to submit payment through Defendants'

payment system and by being required to hire U.S. attorneys to attempt to collect the

amounts paid and to expose. *Id.*


48.     **Act No. 12**:  Matthew P Demaree. Client Matthew P Demaree is a resident of the

United States. All communications between him and the Defendants occurred while the

client was in the United States over the internet (Declaration of Matthew P Demaree).

On or about April 5, 2018, client Matthew P Demaree ordered the product "Slide" on

Slidenjoy/Portabl's website, where Defendants advertised and promised to deliver their

completed computer screen product. (Exhibit C and D; Declaration of Matthew P

Demaree). Client Matthew P Demaree made the first payment of $ 70. *Id.*  On November

25, 2019, when Defendants asked the client for a payment of $420.24 as the remaining

amount, Defendants charged the client $ 840.48 that day without refunding him for the

double cost (Exhibit PA46: payment receipt from the client, dated November 25, 2019;

Declaration of Matthew P Demaree).  Between April 5, 2019, and the present,

Defendants changed the delivery deadlines multiple times (Declaration of Matthew P Demaree).  The client continually attempted to engage with Defendants multiple times to check the delivery status and request a refund of paid funds totaling (Exhibit PA47: emails between Matthew P Demaree and Defendants, dated September 25, 2022; Declaration of Matthew P Demaree).  However, Defendants did not give a concrete timeline but kept instructing the client to wait. *Id.*  To date, client Matthew P Demaree has not received the product that Defendants promised to deliver (Declaration of Matthew P Demaree). Also, client Matthew P Demaree has never received a full refund of the amounts paid based upon the agreement. *Id.*  Due to Defendants' failure to deliver the product, client Matthew P Demaree has suffered injuries, including financial injury, by being required to submit payment through Defendants' payment system and by being required to hire U.S. attorneys to attempt to collect the amounts paid and to expose. *Id.*

49.    **Act No. 13**: Marlon Doyle. Client Marlon Doyle is a resident of the United States. All communications between him and the Defendants occurred while the client was in the United States over the internet (Declaration of Marlon Doyle). On or about January 29, 2020, client Marlon Doyle ordered the product "Slide" on Slidenjoy/Portabl's website, where Defendants advertised and promised to deliver their completed computer screen product (Exhibit C and D; Declaration of Marlon Doyle).  On Slidenjoy/Portabl's website, Defendants required client Marlon Doyle to make a payment for Defendants' product, for which client Marlon Doyle totally paid $ 725. *Id.*  However, between January 29, 2020,  and the present, Defendants changed the delivery deadlines multiple times

(Declaration of Marlon Doyle). In addition, although Defendants reassured client Marlon

Doyle several times that they would deliver a product, Defendants did not provide any of

the products they promised. *Id.*  Later on June 30, 2020, after yet another missed deadline

by Defendants, client Marlon Doyle asked for a refund of payment from Defendants

(Exhibit PA48: email from Marlon Doyle, dated June 30, 2020; Declaration of Marlon

Doyle). Again, however, Defendants instructed the client to wait. *Id.*  To date, client

Marlon Doyle has not received the product that Defendants promised to deliver

(Declaration of Marlon Doyle). Also, client Marlon Doyle has never received a full

refund of the amounts paid based on the agreement. *Id.*  Due to Defendants' failure to

deliver the product, client Marlon Doyle has suffered injuries, including financial injury,

by being required to submit payment through Defendants' payment system and by being

required to hire U.S. attorneys to attempt to collect the amounts paid and to expose. *Id.*


50.     **Act No. 14**:  Scott Williams. Client Scott Williams is a resident of the United

States. All communications between him and the Defendants occurred while the client

was in the United States over the internet (Declaration of Scott Williams).  On or about

April 30, 2022, client Scott Williams ordered the product "Slide" on Slidenjoy/Portabl's

website, where Defendants advertised and promised to deliver their completed computer

screen product (Exhibit C and D; Exhibit PA49: receipt, dated April 30; Declaration of

Scott Williams).  On Slidenjoy/Portabl's website, Defendants required client Scott

Williams to make a payment for Defendants' product, for which client Scott Williams

totally paid $ 571.01. *Id.* Client Scott Williams relied on the product's delivery so that he

could use the product during his trip. (Exhibit PA50: email from the client, dated June 27,

2022). However, between April 30, 2022, and the present, Defendants changed the

delivery deadlines multiple times (Declaration of Scott Williams).  Later, client Scott

Williams asked for a refund of payment from Defendants at least four times (Exhibit

PA51: email from Scott Williams, dated July 23, 2022; Declaration of Scott Williams).

However, to date, client Scott Williams has not received the product that Defendants

promised to deliver (Declaration of Scott Williams). Also, client Scott Williams has never

received a full refund of the amounts paid based on the agreement. *Id.*  Due to

Defendants' failure to deliver the product, client Scott Williams has suffered injuries,

including financial injury, by being required to submit payment through Defendants'

payment system and by being required to hire U.S. attorneys to attempt to collect the

amounts paid and to expose. *Id*.


51.     In addition to the predicate acts described above that satisfy *prima facie* RICO,

Plaintiffs hereby provide additional examples of fraudulent inducement by purchasers.

52.     **Example Act No. 1:**  Diego Schouten. Client Diego Schouten is a resident of the

United Kingdom. All communications between him and the Defendants occurred while

the client was in the United Kingdom over the internet (Declaration of Diego Schouten ).

On or about June 9, 2022, client Diego Schouten ordered the product "Le Slide" on

Slidenjoy/Portabl's website (OVHCloud platform), where Defendants promoted their

products, giving the impression to future purchasers that delivery would occur soon

(Exhibit EA01: receipt, dated August 6, 2022; Declaration of Diego Schouten).

On Slidenjoy/Portabl's website, client Diego Schouten totally paid 489 Euros. *Id.*
Although Defendants reassured that they would deliver a product, Defendants changed
the delivery deadlines multiple times (Declaration of Diego Schouten).  When client
Diego Schouten tried to ask for a refund of payment from Defendants, they continued to
promote the product and avoided giving a timeline to the question of refund (Exhibit
EA02: email from Defendants, dated August 27, 2022; Declaration of Diego Schouten).
To date, client Diego Schouten has not received the product that Defendants promised to
deliver (Declaration of Diego Schouten). Also, client Diego Schouten has never received
a full refund of the amounts paid based on the agreement. *Id.*  Due to Defendants' failure
to deliver the product, the client has suffered injuries, including financial injuries, by
being required to hire U.S. attorneys to attempt to collect the amounts paid and to expose
and prosecute Defendants' criminal activities. *Id.*

53.    **Example Act No. 2:** Jolan Reynaud. Client Jolan Reynaud is a resident of France.
All communications between him and the Defendants occurred while the client was in
France over the internet (Declaration of Jolan Reynaud).  On or about September 26,
2016, client Jolan Reynaud ordered the product "Le Slide" on Slidenjoy/Portabl's website
(OVHCloud platform), where Defendants promoted their products, giving the impression
to future purchasers that delivery would occur soon (Declaration of Jolan Reynaud).  On
Slidenjoy/Portabl's website, client Jolan Reynaud totally paid 504.60 Euros (Exhibit
EA03: receipt, dated October 16, 2019).  On Slidenjoy/Portabl's website, client Jolan
Reynaud totally paid 489 Euros. *Id.*  Although Defendants reassured that they would
deliver a product, Defendants delayed the delivery multiple times (Declaration of Jolan

Reynaud).  When client Jolan Reynaud tried to ask for a refund of payment from

Defendants after 5-year's waiting, they instructed the client to be patient and refused to

refund right away (Exhibit EA04: email from Defendants, dated February 15, 2021;

Declaration of Jolan Reynaud).  To date, client Jolan Reynaud has not received the

product that Defendants promised to deliver (Declaration of Jolan Reynaud).  Also, client

Eric Steels has never received a full refund of the amounts paid based on the agreement.

*Id.*  Due to Defendants' failure to deliver the product, the client has suffered injuries,

including financial injuries, by being required to hire U.S. attorneys to attempt to collect

the amounts paid and to expose and prosecute Defendants' criminal activities. *Id.*


54.     **Example Act No. 3:**  Puneet Sabharwal. Client Puneet Sabharwal is a resident of

India. All communications between him and the Defendants occurred over the internet

(Declaration of Diego Schouten ).  On or about September 7, 2019, client Puneet

Sabharwal ordered the product "Le Slide" on Slidenjoy/Portabl's website (OVHCloud

platform), where Defendants promoted their products, giving the impression to future

purchasers that delivery would occur soon (Exhibit EA05: receipt, dated September 7,

2019; Declaration of Puneet Sabharwal).  On Slidenjoy/Portabl's website, client Puneet

Sabharwal totally paid 406.66 Euros (Declaration of Puneet Sabharwal).  Although

Defendants reassured that they would deliver a product, Defendants changed the delivery

deadlines multiple times. *Id.*  When client Puneet Sabharwal checked the status of

delivery from Defendants, Defendants promised that the product should be delivered in

two months (Exhibit EA05: email from Defendants, dated November 18, 2019).  Two

years later, on May 17, 2022, when answering the question, Defendants repeated the

same delivery timeline (Exhibit EA06: email from Defendants, dated May 17, 2022;

Declaration of Puneet Sabharwal).  To date, client Puneet Sabharwal n has not received

the product that Defendants promised to deliver (Declaration of Puneet Sabharwal). Also,

client Puneet Sabharwal has never received a full refund of the amounts paid based on the

agreement. *Id.*  Due to Defendants' failure to deliver the product, the client has suffered

injuries, including financial injuries, by being required to hire U.S. attorneys to attempt to

collect the amounts paid and to expose and prosecute Defendants' criminal activities. *Id.*


55.    **Example Act No. 4:**   Bernat Roig. Client Bernat Roig is a resident of Spain. All

communications between him and the Defendants occurred while the client was in Spain

over the internet (Declaration of Bernat Roig ).  On or about April 3, 2018, client Bernat

Roig ordered the product "Le Slide" on Slidenjoy/Portabl's website (OVHCloud

platform), where Defendants promoted their products, giving the impression to future

purchasers that delivery would occur soon (Declaration of Bernat Roig).  On January 7,

2020, the client paid 50 Euros to reserve the product (Declaration of Bernat Roig).

Between April 3, 2018, and the present, Defendants changed the delivery deadlines

multiple times (Declaration of Bernat Roig).  When client Bernat Roig checked the status

of delivery from Defendants, Defendants promised that the product should be delivered

in two months (Exhibit EA07: email from Defendants, dated November 22, 2019).  On

January 09, 2020, the client received a message from Defendants indicating that the

product was ready for shipment (Declaration of Bernat Roig).  In relying on the message,

the client paid the requested payment of the remaining amount up to 422.29 Euros

(Exhibit EA08: receipt, dated January 7, 2020).  However, when the client asked about

the delivery, Defendants even explained that the client should not receive the "ready for

shipment" message (Exhibit EA09: chat transcript between Defendants and the client,

dated January 16, 2020).  Later, when the client asked for a refund from Defendants,

Defendants refused to refund but told the client to be patient (Exhibit EA10: email from

Defendants, dated July 13, 2021).  To date, client Bernat Roig has not received the

product Defendants promised to deliver (Declaration of Bernat Roig).  Also, client Bernat

Roig has never received a full refund of the amounts paid based on the agreement. Id.

Due to Defendants' failure to deliver the product, the client has suffered injuries,

including financial injuries, by being required to hire U.S. attorneys to attempt to collect

the amounts paid and to expose and prosecute Defendants' criminal activities. *Id.*

56.     **Example Act No. 5:**   Danny Adamse. Client Danny Adamse is a resident of The

Netherlands.  All communications between him and the Defendants occurred while the

client was in the Netherlands over the internet (Declaration of Danny Adamse).  On or

about May 17, 2016, client Danny Adamse ordered the product "Slide" on

Slidenjoy/Portabl's website (OVHCloud platform), where Defendants promoted their

products, giving the impression to future purchasers that delivery would occur soon

(Exhibit EA11: receipt, dated May 17, 2016; Declaration of Danny Adamse).  On

Slidenjoy/Portabl's website, client Danny Adamse paid 60 Euros. *Id.*  After ordering the

product, Defendants started to notify delays to the client and promised that the delivery

would be around the second quarter of 2017 (Exhibit EA12: email from Defendants.

Dated March 2, 2017; Declaration of Danny Adamse).  On or about October 30, 2018,

after yet another missed deadline by Defendants, client Danny Adamse tried to check the

status of the product and asked for a refund (Exhibit EA13: emails chain, dated October

30, 2018; Exhibit EA14: emails chain, dated December 17, 2018; Exhibit EA14: emails

chain, dated February 7, 2022).  However, Defendants only gave some perfunctory

answers. *Id.*  To date, client Danny Adamse has not received the product Defendants

promised to deliver (Declaration of Danny Adamse).  Also, client Danny Adamse has

never received a full refund of the amounts paid based on the agreement. *Id.*  Due to

Defendants' failure to deliver the product, the client has suffered injuries, including

financial injuries, by being required to hire U.S. attorneys to attempt to collect the

amounts paid and to expose and prosecute Defendants' criminal activities. *Id.*

### FIRST CAUSE OF ACTION
### (RICO: 18 U.S.C. §1962(c))

57.    Plaintiff repeats and re-alleges the allegations of each of the foregoing paragraphs.

58.    This district, and in fact, the 2nd Circuit and other circuits, recognize that it is

unlawful for persons to devise a scheme to defraud by means of false or fraudulent

promises and transmit such false or fraudulent promises by means of wire, including in

interstate or foreign commerce, including in interstate or foreign commerce.

59.    The Conduct of the Enterprise.  The conduct of Defendants and the non-party

members, which constitute the Enterprise, was for the common goal of marketing and

selling the Products, whereby false and fraudulent promises and assertions were made to purchasers of the Product, and the promises were presented in words and through images on websites.

60.     The Entities.  Defendant 120 Pixels SPRL, a company located in Brussels, Belgium, is a "person" within the meaning of 18 U.S.C. §1961(3) and 18 U.S.C. § 1962(c) in that it is a corporation capable of holding a legal interest in the property. Defendants Laurent Wery, Charlee Jeunehomme, Thomas Castro, Quentin Detraux, Maxime Joué, Arcealito Virtudazo, Lindsay Rodrigues, and Cyril Polizzi are "persons" within the meaning of 18 U.S.C. § 1961(3) and 18 U.S.C. § 1962(c) in that each is an individual capable of holding a legal interest in the property. Laurent Wery, Charlee Jeunehomme, and Thomas Castro allege themselves to be cofounders. Quentin Detraux and Maxime Joué serve as customer service agents in furtherance of the Enterprise. Arcealito Virtudazo serves as Customer Service Support Manager in furtherance of the Enterprise. Lindsay Rodrigues serves as community manager in the furtherance of the Enterprise. Cyril Polizzi serves as marketing and video supervisor in furtherance of the Enterprise.  In addition, the other two members of the Enterprise who are non-parties include Kickstarter, PBC, and the OVHCloud platform.

60.     On information and belief, Defendants 120 Pixels SPRL are associated in fact as the register of the Enterprise's website Portabl.com and provider of  places, equipment, and tools for the Enterprise, and sometimes as agent of the Enterprise. On information

and belief, Defendants Laurent Wery, Charlee Jeunehomme, Thomas Castro, Quentin

Detraux, Maxime Joué, Arcealito Virtudazo, Lindsay Rodrigues, and Cyril Polizzi are

associated in fact through employment as Laurent Wery (as CEO); Charlee Jeunehomme

and Thomas Castro (as cofounder in Belgium); Quentin Detraux, Maxime Joué, Arcealito

Virtudazo, Lindsay Rodrigues, and Cyril Polizzi are associated in fact through

employment as managers and staff members. The other two non-party members of the

Enterprise Kickstarter.com and OVHCloud.com are associated in fact as outside services

provider. All above defendants participate directly and indirectly in the common goal of

the purpose of marketing, selling, communicating, and collecting fees, all based upon

fraudulent promises offered to clients of the Enterprise. Plaintiffs all testified that they

bought the Product because they relied on Defendants' and the Enterprise's allegations

and assurance that they would receive the Products within a reasonable set period for

delivery. (Declaration of Berenger Lieber; Declaration of Brian Herczog; Declaration of

Christopher Rines; Declaration of Timothy Leung; Declaration of Kenny Ling;

Declaration of Gary Edmond; Declaration of Daniel MacDonald; Declaration of Denise

Yelvington; Declaration of George Taylor; Declaration of Matthew Mickle; Declaration

of Alex Yohn; Declaration of Matthew P Demaree; Declaration of Marlon Doyle;

Declaration of Scott Williams).

61.     On information and belief, Defendant 120 Pixels SPRL is a company located in

Brussels, Belgium responsible for marketing, promotion, selling, and (non-existent)

manufacture of the Product. On further information and belief, Laurent Wery, Thomas

Castro and Charlee Jeunehomme are cofounders and marketers responsible for directing the efforts of the Enterprise, as well as other defendants in the manner of promotion, marketing, and selling of the Product.

Defendant Quentin Detraux and Maxime Joué are customer service agents responsible for waylaying concerns and requests for refunds from customers of the Product. They provided fraudulent information to customers concerning the pendency of their Product order, thus fraudulently inducing them to avoid requesting a refund in anticipation of delivery of the Product. Defendant Arcealito Virtudazo is a customer service support manager responsible for creating the system of communication and organization between customers and customer service agents.  Defendant Virtudazo created the fraudulent communication base system between customers and other defendants and the Enterprise. Defendant Lindsay Rodrigues is a community manager responsible for promoting and posting, via social media, aspects of the Product and the Enterprise and fraudulently encouraging Plaintiffs, as future customers, into believing delivery of the Product would be accomplished upon purchase. Defendant Cyril Polizzi is a marketing supervisor responsible for creating video presentations and image stills of the Product and inducing purchasers to buy the Product based on the belief that the Product was ready for shipping or was imminently ready for shipping.

62.     Non-party member Kickstarter.com is an online transaction and payment platform. It provided a platform for the Defendants to promote, market, and sell the Product even though it had substantial knowledge of the Enterprise's schemes since many of the

customers, including parts of the Plaintiffs, have reported the Enterprise's scheme to it. Non-party member OVHCloud.com is an internet server provider. It is responsible for maintaining the website and online system for the Enterprise. It is acknowledged that the Enterprise's schemes since Plaintiff Demaree has reported them to it, but it still choose to ignore such reports and complaints, and voluntarily continued to provide service for the Enterprise. In this case, all Defendants and non-party members are different persons from the each other, and all defendants and non-party members are different person from the Enterprise. Each Defendant and non-party member is a person or entity having own rights and responsibilities. All Defendants and the other non-party members are voluntarily associated in fact to be a member of the Enterprise and conducted the Enterprise's affairs in a way forbidden under RICO namely through providing fraudulent promises to promoting, marketing, and selling of the Product.

63. Since at least 2015 and continuing through the present, the members of the Enterprise have had ongoing relations with each other through common control, and/or one or more contracts or agreements relating to and for the purpose of marketing, selling, communicating, and collecting fees, all based upon fraudulent promises offered to customers of the Enterprise, whereby the marketing, selling, communicating, and collecting fees occurred through electronic wires involving foreign commerce, in furtherance of the overall scheme.

64.     The Enterprise's conduct constitutes "fraud by wire" within the meaning of

18U.S.C. § 1343, which is "racketeering activity" as defined by 18 U.S.C. § 1961(1),

further in violation of 18 U.S.C. §1962(c) relating to foreign commerce. The Enterprise's

repeated, and continuous use of such conduct to participate in the affairs of the Enterprise

constitutes a pattern of racketeering activity adhering to 18 U.S.C. § 1961 (5) requirement

for at least two acts within ten years.


65.     C. The Pattern.  As shown above, Plaintiffs have laid out fourteen predicate acts of

racketeering occurring within the past 10 years of each other. All fourteen predicate acts

involve the use of wires in foreign commerce for the performance of the fraudulent

scheme on clients of Defendants.


66.     D.  The Racketeering Activity.  The fourteen predicate acts, all relating to wire

fraud in foreign commerce, as shown above, are related in that they have the same

purpose (that being the marketing, and selling products exclusively created by the

Enterprise), similar results (that being the non-delivery of the Products), and the method

of commission (that being aggressive sales tactics prior to the payments; communication

failures on the part of Defendants; continuous delays by Defendants that resulted in

failure to deliver the Products; continuous marketing even there is no manufactory for the

Enterprise which is on information and belief; and the refusals of Defendants to refund

full fees to customers upon requests).  In all fourteen acts, Defendants assured that the

customers would receive the products they ordered online, and they also aggressively

made promises to satisfy the timelines. However, all the victims testified that Defendants kept using delay strategies to respond or deliver the Product.

67.    The predicates shown above amount to the threat of long-term racketeering activity as the method of commission involving wires in foreign commerce is a regular way of doing business for Defendants.  Kickstarter.com (via link to Portabl.com) and Portabl.com for the Enterprise, prominently and currently advertise the Product as being available and for purchase (Exhibit H). Further, the predicate wire fraud acts for the customers, occurring within 10 years of each other that all involve the Product, further supports the open-ended continuity of the Defendants regular way of doing business.

68.    Wire Fraud in Foreign Commerce.  The Enterprise is engaged in foreign commerce and uses instrumentalities of foreign commerce in its daily business activities, as supported by Declarations of all Plaintiffs (with all clients existing inside or outside the United States and communicating with the Enterprise through wires (including funds transfers)).  In the present case, all communications between members of the Enterprise were by email, wire transfers, credit card payments, and other wire communications between Plaintiff located inside or outside of the U.S. and Defendants. The Enterprise used wires in foreign commerce to market, communicate, sell Products online, and collect funds through Kickstarter.com and Portabl.com.

69.    Defendants Intentionally Participated in a Scheme to Defraud.  Defendants, through kickerstarter.com or the Enterprise's website, which is Portabl.com, notably claimed that the delivery would be done within a set period or before a certain date. and

the scope of work intentionally made these representations with the goal of deceiving Plaintiff that it had the ability to deliver the Products within the delivery period. Plaintiff paid full amounts of the products as requested by Defendants. When viewed in light of the success stories and deliveries which were also shown on kickerstarter.com and Portabl.com, as well as assurances and updates, kept posted on those websites, a reasonable person would have relied upon the misrepresentations.

70.    Injury and Causation.  Plaintiffs have been injured in its business and property by reason of the Enterprise's violations of 18 U.S.C. § 1962(c).  The injuries to Plaintiffs directly, proximately, and reasonably foreseeable resulting from or caused by these violations of 18 U.S.C. §§ 1962(c) and (d) include, but are not limited to, over $10,000,000 dollars in payments to the Enterprise and the Defendants during the false and fraudulent scheme.  But for Defendants' actions, Plaintiffs would not pay such an amount of money for a product that would never be delivered.  Those Plaintiffs, pursuant to 18 U.S.C. § 1964(c), are entitled to treble damages, plus costs and attorneys' fees from Defendants.

### SECOND CAUSE OF ACTION
### CONSPIRACY UNDER 18 U.S.C. §1962(d)

71.        Plaintiffs repeat and re-allege the allegations of each of the foregoing allegations.

72.     Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, and agreed together to violate 18 U.S.C. § 1964(c), as described above, in violation of 18 U.S.C. § 1964(d).

73.     By and through each of the Defendants' business relationships with one another, their close coordination with one another in the affairs of the Enterprise, and frequent email or other kind of communications among the Defendants concerning the marketing, selling, and financially collecting, based upon false and fraudulent promises of the product, as elucidated on websites. Each Defendant knew the nature of the Enterprise, and each Defendant knew that the Enterprise extended beyond each Defendant's individual role. Moreover, through the same connections and coordination, each Defendant knew that the other Defendants were engaged in a conspiracy to financially collect upon false and fraudulent promises occurring over wires in foreign commerce, in violation of 18 U.S.C. § 1962(c).

74.     Each Defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the Enterprise's affairs in order to financially collect upon false and fraudulent promises, included in the agreement, in violation of 18 U.S.C. § 1962(c). In particular, each Defendant was a knowing, willing, and active participant in the Enterprise and its affairs, and each of the Defendants shared a common purpose, namely, the orchestration, planning, preparation, and execution of the scheme to market, sell, and financially collect, based on false and fraudulent promises of the Product, as elucidated on the websites.

75.     Each Defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the Enterprise's affairs in order to commit wire fraud in foreign commerce through a pattern of racketeering in violation of 18 U.S.C. § 1962(c).

76.     The participation and agreement of each of the Defendants were necessary to allow the commission of this scheme.

77.     Plaintiffs' properties have been and have continued to be injured by reason of the Defendants' violations of 18 U.S.C. § 1962(d), in an amount to be determined at the hearing.

78.     The injuries to Plaintiffs directly, proximately, and reasonably foreseeable resulting from or caused by violations of 18 U.S.C. § 1962(d) include hundreds of thousands of dollars in fees paid.

79.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to treble damages, plus costs and attorneys' fees from the Defendants.

## THIRD CAUSE OF ACTION
## FRAUD

80.     Plaintiff repeats and re-alleges the allegations of each of the foregoing allegations.

81.     Defendants misrepresented to Plaintiffs their ability to produce and deliver the computer screens in order to induce Plaintiffs to enter into ordering the product at issue and making payment. The advertisements of Defendants' completed products and stated delivery timeline led Plaintiffs to order Defendants' products.

82.     On their website, Defendants omitted material existing facts that they were not able to produce or deliver the product according to the timeline they promised.

83.     Defendants never delivered products or refunded the amount paid to Plaintiffs but instead kept making illusive promises to induce Plaintiffs to pay the full amount.

84.     Defendants' behaviors in inducing Plaintiffs to order their products but no delivery and no refund are evidence of Defendants' fraudulent behaviors. Therefore, Defendants' representations were false when stated, material to Plaintiffs' decisions to order product and contract with Defendants, and constituted an undisclosed intention by Defendants not to perform its contractual obligations in the manner agreed to with Plaintiffs.

85.     As a direct and proximate result of Defendants' fraud, Plaintiffs are entitled to all sums paid to Defendants as well as consequential damages, in an amount to be determined at trial but believed to be in excess of $10,000,000.00.


### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT

86.     Plaintiffs repeat and re-allege the allegations of each of the foregoing allegations.

87.     Plaintiffs assert that Defendants were unjustly enriched through the acceptance of funds towards the purchase of the Product, and by failing to deliver the Product as well as failing to provide refunds upon request, Defendants benefitted from the holding and use of those funds without providing Plaintiffs interest for the use of the funds.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT

88.     Plaintiffs repeat and re-allege the allegations of each of the foregoing allegations.

89.     On the kickstarter.com platform, the yourslide.com website, and the portabl.com website (collectively, "Sites"), Plaintiffs paid a certain amount of funds based upon the selections and choices Defendants provided with respect to the Product.  Defendants offer of the Product (including selections and variations), Plaintiffs' acceptance of Defendants offer, and payment by Plaintiffs constitutes a valid and enforceable contract under New York law.

90.     Based upon statements and promises made on the Sites, Plaintiffs had the expectation that they would receive their selected Product within a reasonable period of time.

91.     Defendants failed to deliver the Product within a reasonable period of time.  And further, upon request for refunds, Plaintiffs were either rebuffed with excuses given for non-delivery and promises of future delivery by Defendants.


## SIXTH  CAUSE OF ACTION
## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

92.     Plaintiff repeats and re-alleges the allegations of each of the foregoing allegations.

93.     Plaintiffs and Defendants entered into valid, enforceable, and binding contracts.

94.     Plaintiffs tendered in full consideration for this contract.

95.     In exchange for Plaintiffs' payment to their order, Defendants agreed to deliver the tender products.

96.     Plaintiffs are not in breach of the aforementioned contract.

97.     Defendants breached their implied duty of good faith and fair dealing by failing to disclose critical information regarding the products at issue, including the availability of the products and the delivery timeline. Additionally, defendants breached their implied duty to cooperate by not directly answering Plaintiffs' questions about when the products would be delivered.

98.     Defendants also breached their duty of good faith and fair dealing by hindering Plaintiffs from performing their rights to terminate the contract when Plaintiffs asked for a refund after Defendants' multiple delays. Defendants' failure to provide assistance with Plaintiffs' refund requests has amounted to a breach of the duty to cooperate.

99.     As a direct and proximate result of Defendants' fraud, Plaintiffs are entitled to all sums paid to Defendants, in an amount to be determined at trial but believed to be in excess of $10,000,000.

**SEVENTH OF ACTION
NEW YORK GENERAL BUSINESS LAW §349**

100.    Plaintiffs repeat and re-allege the allegations in each of the foregoing paragraphs.

101.    Each Defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the Enterprise's affairs in order to mislead the consumer to buy the products in violation of New York General Business Law § 349.

102.    Since 2015, Defendants, associated with each other under the name of the Enterprise "Slidenjoy/Portabl", unlawfully, knowingly, and willfully kept making

fraudulent promises to mislead Plaintiffs to believe that they would receive the Products after they make payments within a set period or before a certain date. However, even after a long delay of 7 years for some Plaintiffs, none of the Plaintiffs received any Product.

103.   All Plaintiffs are normal consumers who wanted such extended screen Products for their own personal use. Plaintiffs relied on Defendants' such false and misleading communications, assurances and advertisements, and made payment through Defendants' website. No matter how the Plaintiffs asked for refund in the past several years, Defendants never issued them any refund.

104.   According to Defendant's website Portabl.com and the Kickstarter.com, people are still able to buy the products and make payments online right now. Defendants are soliciting purchasers by keeping publishing videos and news about their products on variety of online platforms. If Defendants don't stop, more consumers in this state would be misled by their false and misleading communications, assurances and advertisements and buy a Product which will never be delivered.

105.   Pursuant to New York General Business Law § 349(h), Plaintiff is entitled to treble damages, plus costs and attorneys' fees from the Defendants.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment in its favor against Defendants, jointly and severally, and seek an Order:

a)      Declaring Plaintiffs agreement with Defendants to be fraudulent, based upon false and fraudulent misrepresentations;

b)      Awarding compensatory, direct, and consequential damages, including prejudgement interest, in an amount to be determined at a hearing;

c)      Awarding treble damages;

d)      Requiring Defendants to pay Plaintiffs attorneys' fees and costs;

e)      Open the proceedings of this civil matter to the public pursuant to 18 U.S.C. §1867; and

f)      Any further relief deemed appropriate by the Court, including a civil investigative demand pursuant to 18 U.S.C. § 1968.


## JURY TRIAL DEMANDED

Plaintiffs hereby demand a jury trial.


Dated: October 14, 2022                    Respectfully Submitted:


                                           */s/ Robert M. DeWitty*
                                           Robert M. DeWitty
                                           *Appearing Pro Hac Vice*
                                           Attorney, Plaintiff Grethaka Solutions OÜ
                                           DeWitty and Associates
                                           1875 K Street, Office 429
                                           Washington, D.C. 20006
                                           Tele:  2025717070 / 8665599183
                                           Fax:   2025138071
                                           Email:  admin@dewittyip.com